David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Kurt Opsahl (SBN 191303)
*kurt@eff.org*
Marcia Hofmann (SBN 250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) | C 08-02997-JSW |
| ) | |
| Plaintiff, ) | **FIRST AMENDED COMPLAINT FOR** |
| ) | **INJUNCTIVE RELIEF** |
| v. ) | |
| ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL ) | |
| INTELLIGENCE ) | |
| ) | |
| and ) | |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendants. ) | |

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,
for injunctive and other appropriate relief.  Plaintiff seeks the expedited processing and release of
records requested from the Office of the Director of National Intelligence and Department of
Justice concerning a lobbying campaign to amend federal surveillance law and ensure that

1    telecommunications companies are not held responsible for their role in warrantless government

2    surveillance activities.  There is no dispute that the requested records concern a matter about which

3    there is "[a]n urgency to inform the public about an actual or alleged federal government activity,"

4    and were "made by a person primarily engaged in disseminating information."  5 U.S.C. §

5    552(a)(6)(E)(v)(II); 32 C.F.R. § 1700.12(c)(2) & 28 C.F.R. § 16.5(d)(1)(ii).  Therefore, Plaintiff is

6    statutorily entitled to the expedited treatment it seeks.

7                                                 **PARTIES**

8        2.      Plaintiff Electronic Frontier Foundation ("EFF") is a not-for-profit corporation

9    established under the laws of the State of California, with offices in San Francisco, California and

10   Washington, DC.   EFF is a donor-supported membership organization that works to inform

11   policymakers and the general public about civil liberties issues related to technology, and to act as

12   a defender of those liberties.   In support of its mission, EFF uses the FOIA to obtain and

13   disseminate information concerning the activities of federal agencies.

14       3.      Defendant Office of the Director of National Intelligence ("ODNI") is an

15   Independent Establishment of the Executive Branch of the United States Government.  ODNI is an

16   "agency" within the meaning of 5 U.S.C. § 552(f)(1).

17       4.      Defendant Department of Justice ("DOJ") is a Department of the Executive Branch

18   of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. §552(f)(1).

19   The Office of the Attorney General, Office of Legislative Affairs, Office of Legal Policy, Office of

20   Legal Counsel, and National Security Division are components of Defendant DOJ.

21                                             **JURISDICTION**

22       5.      This Court has both subject matter jurisdiction over this action and personal

23   jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This Court

24   also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

25                        **VENUE AND INTRADISTRICT ASSIGNMENT**

26       6.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

27   1391(e).

28       7.      Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c)

and (d) because a substantial portion of the events giving rise to this action occurred in this district and division, where Plaintiff is headquartered.

## FACTUAL ALLEGATIONS

### The Administration's Campaign to Shield Telecommunications Companies From Liability for Their Role in Unlawful Surveillance Activity

8.    On December 15, 2005, the *New York Times* reported:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.

> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 15, 2005 at A1, *available at* http://www.nytimes.com/2005/12/16/politics/16program.html.   The following day, President Bush confirmed in a radio address that he had authorized a surveillance program to intercept international communications in which one participant was suspected of having a connection to the terrorist organization al Qaeda. President's Radio Address, Dec. 17, 2005, http://www.whitehouse.gov/news/releases/2005/12/20051217.html.

9.    Shortly thereafter, the *New York Times* reported that the NSA's surveillance activity was far more extensive than the operation President Bush had described.  According to the *Times*:

> The National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials.

> The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.

> As part of the program approved by President Bush for domestic surveillance without warrants, the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications, the officials said.

Eric Lichtblau, *Spy Agency Mined Vast Data Trove*, N.Y. TIMES, Dec. 24, 2005, *available at* http://www.nytimes.com/2005/12/24/politics/24spy.html.

10.     On February 6, 2006, *USA Today* reported, "[t]he National Security Agency has secured the cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives."  Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006, *available at* http://www.usatoday.com/news/washington/2006-02-05-nsa-telecoms_x.htm.

11.     Approximately 41 lawsuits have been filed throughout the United States seeking to hold the government and cooperating telecommunications carriers responsible for violating the law and the privacy of individuals through the illegal warrantless spying program.  An additional seven suits have arisen from attempts by state public utility commissioners and attorneys general to seek information from telecommunications carriers about their involvement in warrantless surveillance activities.  Most of these lawsuits have been consolidated and are currently pending in the United States District Court for the Northern District of California.  *In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).[1]

12.     On August 5, 2007, President Bush signed into law the Protect America Act of 2007, legislation that amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept overseas communications of Americans without warrants.  Pub. L. No. 110-55, 121 Stat. 552.   Among other things, the law provided protection for telecommunications companies against future legal liability for participating in certain government surveillance activity.

13.     In an article published the same day, the *New York Times* reported:

[The Protect American Act] gave the administration greater power to force telecommunications companies to cooperate with such spying operations. The companies can now be compelled to cooperate by orders from the attorney general and the director of national intelligence.

Democratic Congressional aides said Sunday that some telecommunications company officials had told Congressional leaders that they were unhappy with that

---

[1] Plaintiff is Co-Lead Coordinating Counsel in this litigation.

provision in the bill and might challenge the new law in court. The aides said the telecommunications companies had told lawmakers that they would rather have a court-approved warrant ordering them to comply.

In fact, pressure from the telecommunications companies on the Bush administration has apparently played a major hidden role in the political battle over the surveillance issue over the past few months.

James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, N.Y. TIMES, Aug. 5, 2007, *available at* http://www.nytimes.com/2007/08/06/washington/06nsa.html.   On information and belief, the assertions quoted above are substantially correct.

14.     Congress included a sunset provision in the Protect America Act stating that the law would expire in February 2008 without further legislative action, which guaranteed further debate over foreign intelligence surveillance law.   President Bush indicated that the Administration intended to push for even greater legal immunity for the telecommunications industry:

When Congress returns in September the Intelligence committees and leaders in both parties will need to complete work on the comprehensive reforms requested by Director [of National Intelligence Mike] McConnell, including the important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007, *available at* http://www.whitehouse.gov/news/releases/ 2007/08/20070805.html.

15.     In an interview discussing the government's warrantless surveillance activities published by the *El Paso Times* on August 22, 2007, Director McConnell stated:

[U]nder the president's program, the terrorist surveillance program, the private sector had assisted us. Because if you're going to get access you've got to have a partner and they were being sued. Now if you play out the suits at the value they're claimed, it would bankrupt these companies. So my position was that we have to provide liability protection to these private sector entities.

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, EL PASO TIMES, Aug. 22, 2007, *available at* http://www.elpasotimes.com/news/ci_6685679.html.

16.     On information and belief, the assertions quoted in paragraph 15 above are substantially correct.

17.     According to an article published by *Newsweek*, "[t]he nation's biggest telecommunications companies, working closely with the White House, have mounted a secretive lobbying campaign to get Congress to quickly approve a measure wiping out all private lawsuits

against them for assisting the U.S. intelligence community's warrantless surveillance programs." Michael Isikoff and Mark Hosenball, *Case Dismissed? The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, Sept. 20, 2007, *available at* http://www.newsweek.com/id/41142.

18.     On information and belief, the assertions quoted in paragraph 17 above are substantially correct.

19.     On information and belief, in 2007 and 2008, lobbyists working on behalf of AT&T, Verizon and/or Sprint/Nextel lobbied DOJ with respect to legislation to amend FISA.

20.     On information and belief, in 2007 and 2008, lobbyists working on behalf of AT&T, Verizon and/or Sprint/Nextel lobbied ODNI with respect to legislation to amend FISA.

21.     In February 2008, both DOJ and ODNI contended that the telecommunications companies who faced liability in *In re NSA Telecommunications Records Litigation* told the government that the companies require immunity from such claims or the companies would not cooperate with future requests for assistance in surveillance.

22.     In testimony before the Senate Select Committee on Intelligence on February 14, 2008, the following exchange occurred between Senator Evan Bayh and Director of National Intelligence Mike McConnell:

> SENATOR EVAN BAYH: … One of the – the key point that you brought out was that without the power to compel, without protection or retroactive protection, the carriers which may be involved in this program realize that they are suffering serious threats to their business livelihood and perhaps even their facilities and personnel if we don't give them retroactive immunity for the work that they've done. And thus, it is my assumption that general counsels of the carriers would be telling you, you show us a court order or we're not going to cooperate on anything which is not covered by a court order. Is that a fair assumption?

> DIRECTOR McCONNELL: Sir, it fair and I would take it a step further. This has to be willing relationship, partnership, and so where we find ourselves now, even with a court order, some are saying we'll take it to court to verify.

23.     In a February 15, 2008 interview with Jim Angle on Fox News, ODNI Director McConnell said, "The companies are telling us if you can't protect us, the cooperation you need is not going to be there."

24.     In a February 17, 2008 interview on Fox News Sunday, ODNI Director McConnell,

during a discussion of immunity for the telecommunications carriers, said, "And the private sector, although willingly helped us in the past, are now saying, 'You can't protect me.  Why should I help you?'"  During the interview, McConnell clarified that he was referring to "the telecommunications companies that you get some data from."

25.     In a February 22, 2008 press conference transcript published on ODNI's website, a "Senior Administration Official" said, "And sure enough, since the expiration [of the Protect America Act] we've been talking to a number of the carriers and they have expressed all these concerns and others."

26.     A February 23, 2008 press release from ODNI said, "In addition, although our private partners are cooperating for the time being, they have expressed understandable misgivings about doing so in light of the on-going uncertainty and have indicated that they may well discontinue cooperation if the uncertainty persists."

27.     In a February 26, 2008 interview with J.J. Green of WTOP Radio in Washington D.C., Director McConnell said, "This past week, we engaged with some private-sector partners, and they weren't so sure they were ready to engage with us."

28.     On February 26, 2008, in a press conference transcript also posted on ODNI's web site as well as DOJ's www.lifeandliberty.gov website, a "Senior Administration Official" said:

> … I, and colleagues of ours, both in ODNI and DOJ, have been working very closely with general counsels offices in the various providers, because they've been asking about this looming potential expiration [of the Protect America Act] for some time and what its implications will be.

29.     In the February 26, 2008 press conference, the Senior Administration Official also said:

> Most providers were complying, but as of the time that we sent the letter, not all. And then soon after that -- we've been in intense discussion, back and forth, with a number of different parties, we achieved full compliance -- just with that, with the compliance with our request to go up on new surveillances under those PAA directives. However, they've made it very clear that this isn't a permanent situation, and they're concerned about it and they might -- they may well withdraw that cooperation if the situation doesn't get cleared up with permanent legislation.

30.     On February 27, 2008, Director McConnell testified before the Senate Armed Services Committee.  The following exchange took place:

SEN. LEVIN: The -- Senator Inhofe raised the FISA issue. I want to just get some facts straight on this. As I understand it, last Friday night the last of the private sector partners, the telecom partners, agreed to cooperate with us. Was that true?

MR. McCONNELL: We negotiated for six days and came to closure on Friday night, yes, sir.

SEN. LEVIN: And so is it true then that as of last Friday night they agreed to cooperate with us?

MR. McCONNELL: They did, sir.

SEN. LEVIN: On a voluntary basis?

MR. McCONNELL: For the subject matter as a part of the debate, the question is the uncertainty going forward. Will they do it again or --

SEN. LEVIN: But as to what we were asking them to do, they agreed to do it?

MR. McCONNELL: Yes, sir.

31.     Congress is currently considering whether to make additional changes to FISA.  The House of Representatives has passed the RESTORE Act of 2007, which would not protect telecommunications companies from civil liability for their role in the government's warrantless surveillance program.   On February 12, 2008, however, the Senate passed its own version of legislation to amend FISA, which purports to require dismissal of any state or federal lawsuit against a carrier for facilitating government surveillance if the Attorney General certifies to the court that the company was assisting in certain intelligence activity authorized by the President. Congress allowed the Protect America Act to expire on February 16, 2008 without reaching an agreement to extend the controversial law.  *See generally* Tim Starks, *House Allows FISA Law to Expire*, CONGRESSIONAL QUARTERLY, February 17, 2008, *available at* http://www.cqpolitics.com/wmspage.cfm?docID=weeklyreport-000002672840.

32.     On February 28, 2008, President Bush urged the House to pass the Senate bill, saying, "Allowing these lawsuits to proceed could make it harder to track the terrorists, because private companies besieged by and fearful of lawsuits would be less willing to help us quickly get the information we need." He also said, "You cannot expect phone companies to participate if they feel like they're going to be sued."

33.     On June 9, 2008, *The Hill* reported on ongoing negotiations on the FISA bills

involving the White House, the Director of National Intelligence, House Majority Leader Steny

Hoyer and Senators Kit Bond and John Rockefeller:

> Bond, with support from the White House and House Republicans, offered a compromise proposal before Memorial Day, saying that phone companies would have to make their case for immunity before a secret court established by the 1978 FISA. Republicans say immunity is needed so phone companies would continue to cooperate with the government.

> Democrats responded with their own proposal last week, but spokeswomen for Hoyer and Rockefeller would not characterize its contents.

Manu Raju, *FISA Measure Tests Relationship Between Rockefeller and Bond*, THE HILL, June 9,

2008, *available at* http://thehill.com/leading-the-news/fisa-measure-tests-relationship-between-

rockefeller-and-bond-2008-06-09.html.

## PLAINTIFF'S FOIA REQUESTS AND REQUESTS FOR EXPEDITED PROCESSING

34.  In a April 24, 2008 letter sent by facsimile to ODNI, EFF requested under the FOIA

all records:

> A.   from December 21, 2007 to the present concerning briefings, discussions, or other exchanges any ODNI official has had with representatives or agents of telecommunications companies[2] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities;

> B.   from December 21, 2007 to the present concerning briefings, discussions, or other communications from any ODNI official to any member of the Senate or House of Representatives or their staffs[3];

> C.   from December 21, 2007 to the present concerning *any* communications, discussions, or other exchanges regardless of subject that any ODNI official has had with Charlie Black, Wayne Berman, Dan Coats, Tom Donilon, Jamie Gorelick or Brad Berenson; and

---

[2] The phrase "representatives or agents of telecommunications companies" was defined to include lobbyists and lawyers acting on behalf of such companies.  According to *Newsweek*, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, *Case Dismissed?*, NEWSWEEK, updated Sept. 26, 2007.

[3] EFF did *not* seek communications *from* members of Congress to ODNI officials.

   D.   from January 1, 2007 to the present that are responsive to the categories
        above, and have not yet been produced in response to previous EFF FOIA
        requests.

35.   In letters sent by facsimile on April 24, 2008 to the DOJ Office of the Attorney
General, Office of Legislative Affairs, Office of Legal Policy, Office of Legal Counsel, and
National Security Division, EFF requested under the FOIA all records:

   A.   from December 21, 2007 to the present concerning briefings, discussions, or
        other exchanges any [DOJ] official has had with representatives or agents of
        telecommunications companies[4] concerning amendments to FISA, including
        any discussion of immunizing telecommunications companies or holding
        them otherwise unaccountable for their role in government surveillance
        activities;

   B.   from December 21, 2007 to the present concerning briefings, discussions, or
        other communications from any [DOJ] official to any member of the Senate
        or House of Representatives or their staffs[5];

   C.   from December 21, 2007 to the present concerning *any* communications,
        discussions, or other exchanges regardless of subject that any [DOJ] official
        has had with Charlie Black, Wayne Berman, Dan Coats, Tom Donilon,
        Jamie Gorelick or Brad Berenson; and

   D.   from January 1, 2007 to the present that are responsive to the categories
        above, and have not yet been produced in response to previous EFF FOIA
        requests.

36.   In its April 24 letters, EFF formally requested that the processing of each request be
expedited because it pertains to information about which there is "[a]n urgency to inform the public
about an actual or alleged federal government activity," and were "made by a person primarily
engaged in disseminating information."  5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 1700.12(c)(2)
& 28 C.F.R. § 16.5(d)(1)(ii).

37.   By letter dated April 28, 2008, the DOJ National Security Division acknowledged
receipt of EFF's FOIA request, and by letter dated May 2, 2008 informed EFF that its request for
expedited processing had been granted.

38.   By letter dated May 2, 2008, the DOJ Office of Information and Privacy

---

[4] The phrase "representatives or agents of telecommunications companies" is defined the same as
noted above.
[5] EFF did *not* seek communications *from* members of Congress to DOJ officials.

1    acknowledged receipt of EFF's FOIA requests to the Office of the Attorney General, Office of

2    Legislative Affairs, and Office of Legal Policy, and informed EFF that its requests for expedited

3    processing had been granted.

4         39.    By letter dated May 5, 2008, ODNI acknowledged receipt of EFF's FOIA request,

5    and informed EFF that "In response to part A of your request, ODNI has located no additional

6    responsive records beyond what was located in your two prior FOIA requests."  By letter dated

7    May 16, 2008, ODNI informed EFF that its request for expedited processing had been granted.

8         40.    By letter dated May 5, 2008, the DOJ Office of Legal Counsel acknowledged

9    receipt of EFF's FOIA request and informed EFF that its request for expedited processing had been

10   granted.

11        41.    ODNI responded to part A of EFF's FOIA request by claiming that the agency has

12   no records responsive to that portion of EFF's request.  By letter dated June 10, 2008, EFF

13   administratively appealed ODNI's determination on part A.   On July 10, 2008, ODNI

14   acknowledged receipt of the appeal, advising EFF that it would "be advised of the determinations

15   made." To date, EFF has received no determination on the June 10, 2008 appeal.

16        42.    Collectively, EFF's April 24 FOIA requests are referred to as the "Unanswered

17   FOIA Requests."   Notwithstanding ODNI and DOJ's purported decisions to expedite the

18   processing of all of EFF's April 24 FOIA requests, to date, the agencies have not completed the

19   processing of the Unanswered FOIA Requests nor agreed to a specific date for the completion of

20   the processing of the Unanswered FOIA Requests.

21        43.    Not only have ODNI and DOJ failed to expedite the processing of the Unanswered

22   FOIA Requests, they have also exceeded the generally applicable 20-day deadline for the

23   processing of any FOIA request or appeal.

24        44.    EFF has exhausted all applicable administrative remedies with respect to the

25   Unanswered FOIA Requests.

26        45.    Defendants ODNI and DOJ have wrongfully withheld the requested records from

27   EFF.

28

**CAUSE OF ACTION**

**<u>Violation of the Freedom of Information Act for</u>**
**<u>Wrongful Withholding of Agency Records</u>**

46.     Plaintiff repeats and realleges paragraphs 1-45.

47.     ODNI and DOJ have wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of the Unanswered FOIA Requests.

48.     Plaintiff has exhausted the applicable administrative remedies with respect to ODNI and DOJ's wrongful withholding of the records requested in the Unanswered FOIA Requests.

49.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

//

//

**Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A.     order Defendants ODNI and DOJ to process immediately the records requested in the Unanswered FOIA Requests in their entirety;

B.     order Defendants ODNI and DOJ, upon completion of such expedited processing, to disclose such requested records in their entirety and make copies available to Plaintiff;

C.     provide for expeditious proceedings in this action;

D.     award Plaintiff its costs and reasonable attorneys fees incurred in this action; and

E.     grant such other relief as the Court may deem just and proper.


DATED:  July 11, 2008

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066


*/s/*
Kurt Opsahl, Esq.
Marcia Hofmann, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

**PROOF OF SERVICE**

I, Kurt Opsahl, declare:

I am employed in the City and County of San Francisco, California by Electronic Frontier Foundation at 454 Shotwell Street, San Francisco, California 94110.  I am over the age of eighteen years and am not a party to the within cause.

On July 11, 2008, at the above-referenced address, I served the attached FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF on the interested parties in said cause by

___ personal delivery by messenger service of the document(s) above to the person(s) at the address(es) set forth below:

 X  placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in accordance with the firm's practice of collection and processing correspondence with the United States Postal Service, which in the normal course of business provides for the deposit of all correspondence and documents with the United States Postal Service on the same day they are collected and processed for mailing to the person(s) at the address(es) set forth below:

Adam D. Kirschner
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530

___ facsimile transmission pursuant to Rule 2008 of the California Rules of Court on this date before 5:00 p.m. (PST) of the document(s) listed above from sending facsimile machine telephone number (415) 436-9993, and which transmission was reported as complete and without error (copy of which is attached), to facsimile number(s) set forth below:

___ consigning the document(s) listed above to an express delivery service for guaranteed delivery on the next business day to the person(s) at the address(es) set forth below:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  July 11, 2008

/s/
KURT OPSAHL