Marcia Hofmann (SBN 250087)
*marcia@eff.org*
Kurt Opsahl (SBN 191303)
*kurt@eff.org*
Nathan D. Cardozo (SBN 259097)
*nate@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and DEPARTMENT OF JUSTICE,<br><br>Defendants. | NOS. 08-1023 JSW & 08-2997 JSW<br><br>**REPLY TO OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          TBD<br>Time:          9:00 a.m.<br>Courtroom:  2, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

SUMMARY OF ARGUMENT ........................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF ADDITIONAL FACTS ........................................................1

III.  ARGUMENT ........................................................................................................2

   A.   EFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT HAS IMPROPERLY WITHHELD AGENCY RECORDS ........................................................................... 2

      1.   The Defendants Have Improperly Withheld Agency Records Under Exemption 5 .......................................................................................................... 2

         (a)   The Defendants Have Failed to Show That All Records Satisfy the Inter-Agency or Intra-Agency Threshold Required to Claim Any Exemption 5 Privilege .................................................................................................. 2

         (b)   The Defendants Have Failed to Show that Records Have Been Properly Withheld Pursuant to the Presidential Communications Privilege .................. 6

         (c)   The Government Has Failed to Show that Records Have Been Properly Withheld Pursuant to the Deliberative Process Privilege ................................ 9

         (d)   The Government Has Failed to Show that Records Have Been Properly Withheld Pursuant to the "Common Interest" Privilege or the Attorney Work Product Doctrine ................................................................................. 12

      2.   The Defendants Improperly Withheld Records Under Exemption 6 ..................... 15

      3.   The Government Has Failed to Segregate Exempt Materials From Non-Exempt Material as the FOIA Requires ......................................................................... 17

   B.   THE COURT SHOULD REVIEW THE DISPUTED RECORDS IN CAMERA ................................ 18

IV.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Cornejo*, 2001 WL 826878 (N.D. Ill. July 20, 2001) .................................................. 11

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291 (N.D. Cal. 1992) ........................................................................................................................................ 18

*Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984) ........................ 12

*Calif. State Foster Parent Ass'n v. Wagner*, No. 07-05086, 2008 U.S. Dist. 63819, 2008 WL 2872775 (N.D. Cal. July 23, 2008) .............................................................................................. 12

*Church of Scientology v. Dep't of Army*, 611 F.2d 738 (9th Cir. 1980) .................................. 17, 18

*Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland Security*, 592 F. Supp. 2d 127 (D.D.C. 2009) ..................................................................................................................... 6

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............................. 10

*Ctr. for Biological Diversity v. Office of Management and Budget,* No. 07-4997 MHP, 2008 U.S. Dist. LEXIS 98387, 2008 WL 5129417 (N.D. Cal. Dec. 4, 2008).......................................... 8, 9

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)................. 3, 5, 6

*Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571 (D.C. Cir. 1990) ........................................ 3, 6

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56 (D.D.C. 2007) ............................ 11

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1979).................................................................................. 5

*Goland v. CIA*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam)............................................................ 5

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838 (D.C. Cir. 1980)... 5

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA,* 455 U.S. 997 (1982)................. 5

*Hunt v. U.S. Marine Corp.*, 935 F. Supp. 46 (D.D.C. 1996)........................................................... 11

*Hunton & Williams, LLP v. Dep't of Justice*, No. 06-477, U.S. Dist. LEXIS 26015, 2008 WL 906783 (E.D. Va. March 31, 2008) ...................................................................................... 5, 14

*In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007); *Clark v. United States*, 289 U.S. 1 (1933)......................................................................................................................... 15

*In re Sealed Case*, 121 F.3d 121 F.3d 729 (D.C. Cir. 1997)............................................................ 9

*Judicial Watch v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004)................................................ 7

*Judicial Watch v. Dep't of the Army*, 402 F. Supp. 2d 241 (D.D.C. 2005) ................................... 11

*Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271 (D.D.C. 2004)................................ 11

*Judicial Watch, Inc. v. Dep't of Energy,* 412 F.3d 125 (D.C. Cir. 2005) ........................................ 11

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) .............................. 11

*L.A. Times Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975 (C.D. Cal. 2007) ................... 18

*L.H. v. Schwartzenegger*, No. 06-2042, 2007 U.S. Dist. LEXIS 52060, 2007 WL 2009807 (E.D. Cal. July 6, 2007)................................................................................................................................ 12

*Lawyers' Comm. For Civil Rights of San Francisco Bay Area v. Dep't of the Treasury*, No. 07-2590 PJH, 2008 U.S. Dist. LEXIS 87624, 2008 WL 448285 (N.D. Cal. Sept. 30, 2008).......... 18

*Mapother v. Dep't of Justice*, 3 F.3d 1533 (D.C. Cir. 1993) ........................................................... 12

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 556 F.2d 242 (D.C. Cir. 1977) ......................... 18

*N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501 (S.D.N.Y. 2007)................................... 11

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005) ................................... 10

*Nat'l Institute of Military Justice v. Dep't of Defense*, 512 F.3d 677 (D.C. Cir. 2008) ................... 3

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)..................................................................... 10

*Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) .................................................................................. 5

*Paisley v. CIA*, 724 F.2d 201 (D.C. Cir. 1984) (per curiam) ............................................................ 5

*People of the State of Calif. v. EPA*, 07-2055 JSW, 2008 WL 5384623 (N.D. Cal. Dec. 22, 2008) 12

*People of the State of Calif. v. EPA*, No. 07-2055 (JSW), 2009 WL 273411 (N.D. Cal. Feb. 4, 2009) .............................................................................................................................................. 19

*Ryan v. Dep't of Justice*, 617 F.2d 781 (D.C. Cir. 1980)................................................................. 3

*Security Financial Life Insurance Co. v. Dep't of the Treasury*, 03-102, 2005 U.S. Dist. LEXIS 6641, 2005 WL 839543 (D.D.C. April 12, 2005)....................................................................... 11

*United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003) ......................................................... 13

*United States v. Rozet*, 183 F.R.D. 662 (N.D. Cal. 1998)............................................................... 10

*United We Stand America, Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) ........................................... 5

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ................................................................................... 19

*Williams v. Dep't of Justice*, 556 F. Supp. 63 (D.D.C. 1982) ........................................................ 11

## STATUTES

2 U.S.C. § 1601 .............................................................................................................................. 16

5 U.S.C. § 551(1)(A) ............................................................................................................ 3

5 U.S.C. § 552 ................................................................................................................ passim

5 U.S.C. § 552(a)(4)(B) ...................................................................................................... 18

5 U.S.C. § 552(b) ................................................................................................................. 17

5 U.S.C. § 552(f)(1) .............................................................................................................. 3

**OTHER AUTHORITIES**

Ethics Commitments by Executive Branch Personnel, Exec. Order No. 13,490, 3 C.F.R. 13490
(Jan. 21, 2009) ................................................................................................................ 17

Memorandum for Heads of Executive Departments and Agencies (March 19, 2009) ...................... 2

Memorandum for Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 21,
2009) ................................................................................................................................ 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY OF ARGUMENT**

The Court should grant summary judgment in EFF's favor because the defendant agencies have not demonstrated that all withheld documents are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B). First, the government has improperly withheld records under Exemption 5. As an initial matter, the government cannot show that all withheld records satisfy the "inter-agency or intra-agency" threshold, a prerequisite for any Exemption 5 privilege. 5 U.S.C. 552(f)(1), 5 U.S.C. § 551(1)(A); *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). Furthermore, the government continues to argue for an unprecedented interpretation of the presidential communications privilege to withhold material beyond communications authored or solicited and received by the President's "immediate advisers or their staff members." *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004); *Ctr. for Biological Diversity v. Office of Management and Budget,* No. 07-4997 MHP, 2008 U.S. Dist. LEXIS 98387, 2008 WL 5129417, at *12 (N.D. Cal. Dec. 4, 2008). Moreover, the government has invoked the deliberative process privilege to withhold records that are neither predecisional nor deliberative. *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998); s*ee also, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007). The government has also failed to show that agency records withheld pursuant to the common interest privilege or the attorney work product doctrine are subject to those privileges. *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003); *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007).

Second, the government has improperly invoked Exemption 6 to hide the identities of lobbyists. The efforts of paid lobbyists to influence the government is a matter of great public interest that outweighs any minimal privacy interest that lobbyists might have in their activities. *See* Michael Isikoff and Mark Hosenball, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007; 2 U.S.C. § 1601.

1    Finally, the government has not provided sufficiently detailed information to demonstrate

2    that all non-exempt material has been segregated from exempt information. *Church of Scientology*

3    *v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1980). Due to the substantial questions raised about

4    the impropriety of the agencies' withholdings, the Court should deny the government's

5    consolidated motion for summary judgment and grant EFF's cross motion for summary judgment.

6    If the Court has any doubt as to the impropriety of the agencies' exemption claims, it should

7    conduct an *in camera* inspection of the withheld records. *Church of Scientology*, 611 F.2d at 743.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the disclosure of records held by defendants Office of the Director of National Intelligence ("ODNI") and Department of Justice ("DOJ") concerning the efforts of the agencies and telecommunications carriers to push for changes to U.S. foreign intelligence surveillance law, especially to ensure that the carriers received legal immunity for their role in the government's unlawful surveillance of millions of Americans. The defendants have moved for summary judgment, asking the Court to sustain their decision to withhold a substantial portion of the requested material in part or whole. Because the agencies have failed to meet their burden, the Court should deny the government's consolidated motion for summary judgment and grant the plaintiff's cross motion for summary judgment. If the Court has any question about the impropriety of the defendant's withholdings, the Electronic Frontier Foundation ("EFF") respectfully requests that the Court review all disputed material *in camera*, and order the defendants to immediately disclose all improperly withheld records.

## II.   STATEMENT OF ADDITIONAL FACTS

On his first full day in office, President Obama issued a memorandum to the heads of all executive branch departments and agencies concerning FOIA. Memorandum for Heads of Executive Departments and Agencies, 74 Fed. Reg. 4683 (Jan. 21, 2009). The memorandum provided, in pertinent part, that "[a]ll agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles enshrined in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA." *Id.* President Obama also directed the Attorney General "to issue new guidelines governing the FOIA to the heads of executive departments and agencies, reaffirming the commitment to accountability and transparency, and to publish such guidelines in the Federal Register." *Id.* While the parties' cross motions for summary judgment were pending in this case, the Attorney General issued the new FOIA guidelines in a memorandum to the heads of executive departments and

agencies. Memorandum for Heads of Executive Departments and Agencies (March 19, 2009), http://www.usdoj.gov/ag/foia-memo-march2009.pdf.

On March 23, 2009, the Court stayed these proceedings pending review of the Attorney General's guidelines. Order (08-1023 Dkt. 77; 08-2997 Dkt. 60). On May 12, 2009, after applying the new guidelines to the material withheld by the government, the defendants emailed EFF a small number of additional records identified for "discretionary release," and filed revised *Vaughn* declarations and indices reflecting the disclosures. (08-1023 Dkts. 79-83; 08-2997 Dkts. 62-66). As discussed in greater detail below, the release of these records has little effect on the issues before the Court, as the government continues to withhold the vast majority of the disputed material.

## III.   ARGUMENT

### A.   EFF is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records

As described in detail below, the defendants have failed to satisfy their burden of proving that they have released all non-exempt material in response to EFF's FOIA requests. As a result, the Court should deny the government's consolidated motion for summary judgment and grant EFF's cross motion for summary judgment, requiring ODNI and DOJ to release all material they have improperly withheld under the FOIA.

#### 1.   The Defendants Have Improperly Withheld Agency Records Under Exemption 5

The government has failed to show that it withheld all material properly and is entitled to summary judgment.

##### (a)   The Defendants Have Failed to Show That All Records Satisfy the Inter-Agency or Intra-Agency Threshold Required to Claim Any Exemption 5 Privilege

As the government concedes, the "the bulk of the records at issue in this case consists of confidential email messages exchanged between ODNI or DOJ officials and congressional staff in which the parties to the emails discussed, analyzed and negotiated possible amendments to FISA." Defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in Support of Defendants' Consolidated Motion for Summary Judgment at 2:16-18 ("Defs. Opp. Pl. Cross Mot. Summ. J.") (08-2997 Dkt. 46). The government asserts that all these communications satisfy

1   the "inter-agency or intra-agency" threshold for Exemption 5 protection, but this argument flies in

2   the face of the FOIA's plain language and legislative history. *See* Plaintiff's Opposition to

3   Defendants' Consolidated Motion for Summary Judgment and Cross Motion for Summary

4   Judgment at 12:8-13:2 ("Pl. Cross Mot. Summ. J.") (08-2997 Dkt. 43). The FOIA unambiguously

5   defines the term "agency" to include "any executive department, military department, Government

6   corporation, Government controlled corporation, or other establishment in the executive branch of

7   the Government (including the Executive Office of the President), or any independent regulatory

8   agency," 5 U.S.C. § 552(f)(1), but *not* Congress. 5 U.S.C. § 551(1)(A).  Congress is simply not an

9   "agency" for purposes of the "inter-agency or intra-agency" threshold for Exemption 5 protection.

10          Unable to find any support for an "inter-Branch" privilege in the statute itself, the

11   government contends that the records meet the "inter-agency or intra-agency" threshold because

12   they facilitated the agencies' own deliberative processes, as well as those of Congress, citing *Dep't*

13   *of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). The government

14   glosses over the fact that the Supreme Court held in *Klamath* that communications between an

15   agency and non-agency entity are considered "inter-agency or intra-agency records" only when

16   they "ha[ve] been received by an agency, to assist it in the performance of its *own functions*, from a

17   person acting in a governmentally conferred capacity other than on behalf of another agency—*e.g.*,

18   in a capacity as employee or consultant to the agency, or as employee or officer of another

19   governmental unit (not an agency) that is *authorized or required to provide advice to the agency*."

20   *Id.* at 9-10 (emphasis added).

21          The D.C. Circuit similarly has found that a document may satisfy the Exemption 5

22   threshold only "when an agency record is submitted by an outside consultant as part of the

23   deliberative process, and it was *solicited by the agency*[.]" *Nat'l Institute of Military Justice v.*

24   *Dep't of Defense*, 512 F.3d 677, 680 (D.C. Cir. 2008) (emphasis added) (citing *Ryan v. Dep't of*

25   *Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980)). Furthermore, the communications must have been

26   "created for the purpose of aiding the *agency's* deliberative process," not the process of the outside

27   party. *Nat'l Institute of Military Justice*, 512 F.3d at 681 (quoting *Dow Jones & Co. v. Dep't of*

28   *Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990)) (emphasis in *Dow Jones*)).

While some of the records withheld by the defendants likely fit these criteria, the government's affidavits are replete with evidence that many of the withheld records were not provided at the request of DOJ or ODNI, and did not further the agencies' own deliberations, but rather those of Congress.[1] Such records simply do not satisfy the "inter-agency or intra-agency" threshold requirement, and are not exempt from disclosure.

The government argues that grave harm will result if the Court finds that inter-Branch communications do not satisfy the Exemption 5 threshold. Defs. Opp. Pl. Mot. Summ. J. at 8:19-9:9. These concerns, while discussed at length in the government's affidavits, are baseless. As EFF explained in its opening brief, congressional offices may retain control over a document in an agency's possession by simply manifesting an intent to keep the record confidential at the time of its creation and/or transmission. Pl. Cross Mot. Summ. J. at 14 n. 8. While the government complains that "those participating in the communications believed them to be confidential," Defendants' Consolidated Motion for Summary Judgment at 12:27-28 ("Defs. Mot. Summ. J.") (08-2997 Dkt. 29), the government's declarations do not assert that any withheld communication

---

[1] *See, e.g.,* Declaration of Kathleen Turner ¶ 8 (08-2997 Dkt. 30) ("ODNI staff viewed it as our responsibility to *provide* congressional staff with as much information and assistance as possible"); Declaration of J. Michael McConnell ¶ 20 ("McConnell Decl.") (08-2997 Dkt. 42) ("As the communications at issue in this case reflect, congressional staff often *actively sought out* the assistance of staff in the Executive Branch in crafting legislative provisions"); Declaration of Melanie Ann Pustay ¶ 56 ("Pustay Decl.") (08-2997 Dkt. 33) (characterizing communications in OIP *Vaughn* Index Groups 5-8 as "reflect[ing] Department officials' *commentary and suggestions* [to congressional staff] on the proposed FISA legislation," and explaining that "[e]-mail chains were created as advice [that] *was sought* regarding congressional bills under discussion and officials *offered* language for inclusion in amendments, *provided* candid opinions on language offered by others . . . or *presented* arguments for language to insert."); Declaration of Charles M. Steele ¶ 20 ("Steele Decl.") (08-2997 Dkt. 35) ("OLC attorneys *conveyed* information, advice and recommendations to members of Congress and congressional staff, *often at their request*," and "OLC attorneys were able to *assist* Members and congressional staff in crafting technical legislative language"); *see also* Steele Decl. ¶ 26 (withheld communications "reflect preliminary assessments by attorneys and other staff about issues as to which *they had been asked* to make recommendations and provide advice.") & ¶ 28 (documents described in NSD *Vaughn* Index Groups 2-3 "reflect the [DOJ] officials' advice and discussions created while executing the Department's responsibility of *offering suggestions and commentary* with respect to the Administration's position regarding proposed legislation," while documents identified in Groups 1-2 & 4-6 "reflect Department officials' *commentary and suggestions* on legislation")) (all emphasis added).

---

1   was so sensitive as to be labeled confidential at the time it was sent, and therefore not subject to

2   treatment as an "agency record" covered by FOIA.[2]

3          Furthermore, the defendants fail to provide any persuasive reason why their

4   communications with representatives of telecommunications carriers should be considered "inter-

5   agency or intra-agency" records for purposes of Exemption 5. In arguing that the communications

6   satisfy the Exemption 5 threshold because the agencies and carriers have a common interest in

7   ongoing litigation, *see* Defs. Opp. Pl. Cross Mot. Summ. J. at 10 n.2, the government misses the

8   mark. As EFF explained in its opening brief, communications between an agency and an outside

9   party may not qualify for Exemption 5 protection where the outside party communicates with the

10  agency "with [its] own . . . interests in mind," rather than to serve the *agency's* interests. *Klamath*,

11  532 U.S. at 11.  Here, the carriers communicated with the government to ensure Congress passed

12  legislation that would give the carriers immunity from legal liability. Their efforts were intended to

13  further their own interests, not the internal deliberative process of ODNI or DOJ. As such, the

14  carriers' communications with the agencies also fail to meet the threshold for Exemption 5

15  protection.[3]  Even if they did meet the threshold, the common interest privilege is inapplicable here

16  to protect these communications from disclosure under Exemption 5, as described in further detail

17

18  [2] Indeed, the threshold "agency records" analysis under the FOIA protects against the type of harm
    to the legislative process that the government seeks to assert here. Any congressional record
19  deemed to be confidential at the time of its creation and exchange would typically not be treated as
    an "agency record" subject to FOIA. *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1979), *vacated in part
20  on other grounds*, 607 F.2d 367 (D.C. Cir. 1979) (per curiam); *Holy Spirit Ass'n for the Unification
    of World Christianity v. CIA*, 636 F.2d 838 (D.C. Cir. 1980), *vacated in part on other grounds*, 455
21  U.S. 997 (1982); *Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983) *vacated in part on other grounds*,
    724 F.2d 201 (D.C. Cir. 1984) (per curiam); *United We Stand America, Inc. v. IRS*, 359 F.3d 595
22  (D.C. Cir. 2004). Here, however, the agencies have never contended that the disputed documents
    are not "agency records."
23

24  [3] This case is easily distinguishable from *Hunton & Williams, LLP v. Dep't of Justice*, No. 06-477,
    U.S. Dist. LEXIS 26015, 2008 WL 906783 (E.D. Va. March 31, 2008). As explained in Section
25  1(d) below, the common interest privilege does not apply to the lobbying records at issue in this
    litigation. Moreover, assuming *arguendo* that the government and carriers have a common interest
26  agreement with respect to ongoing litigation against the carriers, *Hunton* does not support the
    contention that the agreement extends to communications between the parties for other purposes.
27  Such communications do not meet the "inter-agency or intra-agency" threshold.

28

*infra* in Section 1(d).

Finally, the government repeats its argument that the doctrine of constitutional avoidance requires the Court to conclude that the withheld documents satisfy the Exemption 5 threshold. Defs. Opp. Pl. Cross Mot. Summ. J. at 9:10-10:-13. The plain language of the FOIA leaves no doubt as to its meaning, however, so there is no basis for the Court to invoke the doctrine. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland Security*, 592 F. Supp. 2d 127, 131 (D.D.C. 2009) ("in the absence of statutory ambiguity the constitutional avoidance doctrine has no place[.]") The case law clearly provides that the canon may be applied only to resolve uncertainty in statutory language, not to read an exception into a law that has no foundation in the text or legislative history. *See Klamath*, 532 U.S. at 15-16 (refusing to read an "Indian trust" exemption into the FOIA because "there is simply no support for the exemption in the statutory text, which we have elsewhere insisted be read strictly in order to serve FOIA's mandate of broad disclosure"). As much as the government may wish the FOIA included an exemption for communications between agencies and Congress—or believe that such a provision would be appropriate—no such privilege exists. *Dow Jones*, 917 F.2d at 1010 n.2 (rejecting government's claim that Exemption 5 includes a government-wide, inter-Branch privilege).

**(b)      The Defendants Have Failed to Show that Records Have Been Properly Withheld Pursuant to the Presidential Communications Privilege**

The government continues to press its aggressive interpretation of the presidential communications privilege to cover even communications that have no direct connection to any White House official, despite the fact that no court has ever authorized such an expansive invocation of the privilege.[4] The defendants fail to provide a compelling reason why the Court

---

[4] The agencies claim the privilege has been asserted most frequently to shield communications among Executive agency officials, congressional staffers, and occasionally representatives of telecommunications carriers where the communications have no nexus to the White House whatsoever. *See, e.g.*, revised ODNI *Vaughn* Index Groups 2-3, 6; revised OIP *Vaughn* Index Groups 2-7 & 9; revised OLC *Vaughn* Index Groups 1, 7-8, 11, 13-14, 17-20, 22-23, 25, 29, 31-33, 35-44, 47-49, 51, 53-59, 61-73, 75-79, 81-87, 88-93, 97, 105-111; revised NSD *Vaughn* Index Part 1, Groups 1, 4-7 & Part 2, Groups 4, 6.

1  should not follow *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004) , which they

2  sought to dismiss in their opening brief as a narrow holding that was "wrongly decided." Defs.

3  Mot. Summ. J. at 21:22-24:23. The government now claims that *Judicial Watch* is distinguishable

4  because the agency records in that case "were related to the preparation of pardon

5  recommendations, but never transmitted to the President or his immediate White House advisors,"

6  and so "had a much more tenuous nexus to presidential decisionmaking and deliberations." Defs.

7  Opp. Pl. Cross Mot. Summ. J. at 17:1-4. Here, the defendants invoke the presidential

8  communications privilege primarily to withhold documents that likewise have never been

9  transmitted to the President or his immediate White House advisors, which is precisely what

10  *Judicial Watch* rejected. 365 F.3d at 1123.[5]

11        With respect to the relatively few records the government claims have some connection to a

12  White House official,[6] the defendants still have not satisfied their obligation to identify the advisors

13  and the responsibilities they exercise.[7] Judge Patel recently determined that a *Vaughn* submission

14

15  [5] The government does not dispute EFF's contention that the presidential communications privilege

16  may be properly invoked to shield only communications from disclosure, not draft legislation,
   handwritten notes or other documents as described in revised ODNI *Vaughn* Index Group 2-3 & 6;

17  revised OIP Index Groups 4-8; revised OLC *Vaughn* Index Group 78; and revised NSD *Vaughn*
   Index Part 1, Groups 1, 6 & 7. Pl. Cross Mot. Summ. J. at 18:15-19:1. (Indeed, OLC disclosed the

18  calendar entries listed at revised OLC *Vaughn* Index Groups 88 & 98-104 in its May 12, 2009

19  discretionary release. *See* Supplemental Declaration of Marcia Hofmann Ex. A ("Supp. Hofmann
   Decl.").) The government responds that these are "all records that do not have a White House

20  author or recipient listed on the Vaughn indices[.]" Defs. Opp. to Cross Pl. Mot. Summ. J. at 19 n.7.
   The fact that these documents concededly have no nexus to the White House only underscores the

21  inapplicability of the presidential communications privilege to shield such material from

22  disclosure.

23  [6] *See*, *e.g.*, revised ODNI *Vaughn* Index Groups 2 & 6; revised OIP *Vaughn* Index Groups 1, 8, 10;

24  revised OLC *Vaughn* Index Groups 2-3, 6, 10, 12, 15-16, 21, 24, 26, 60, 94-96 &113; and revised
   NSD *Vaughn* Index Part 1, Group 2 & Part 2, Group 5.

25  [7] DOJ recently chose to release the names of a handful of high-level White House officials who

26  were parties to several communications listed in revised NSD *Vaughn* Index Part 2, Group 5, and
   revised OIP *Vaughn* Index 10. *See* Supp. Hofmann Decl. Exs. B & C. However, NSD released

27  these names in only five of the 32 records in revised NSD *Vaughn* Index Part 2, Group 5, and
   continues to withhold the names of all White House officials in the other records. Supp. Hofmann

28  Decl. Ex. B. Similarly, OIP has released names of two White House officials in three email

sufficient to justify the invocation of the presidential communications privilege must include "individuals' specific capacities or other indicators of proximity to the President or his key advisors." *Ctr. for Biological Diversity v. Office of Management and Budget,* No. 07-4997 MHP, 2008 U.S. Dist. LEXIS 98387, 2008 WL 5129417, at *12 (N.D. Cal. Dec. 4, 2008). The government attempts to distinguish *Ctr. for Biological Diversity* by claiming that OMB's *Vaughn* submission in that case did not clearly establish whether the presidential advisors for whom the presidential communications privilege was invoked "qualified as immediate White House advisors with broad and significant responsibility for investigating and formulating the advice to be given to the President." Defs. Opp. to Pl. Mot. Summ. J. at 19:7-9. Yet Daniel Meyer's affidavit suffers from the same deficiency. Declaration of Daniel P. Meyer ("Meyer Decl.") (08-2997 Dkt. 39). Specifically, Mr. Meyer states:

> I have been informed that *some* of the withheld documents were particularly close to the President's legislative deliberations and decisionmaking in that they were authored by, or solicited and received by, the President's White House staff, *including* representatives from the White House Office of the Chief of Staff, the White House Counsel's Office, the White House Office of Legislative Affairs, and the White House Office of Communications, as well as staff at the Office of the Vice President.

Meyer Decl. ¶ 22 (emphasis added). By the government's own admission, only *some* of the communications withheld pursuant to the presidential communications privilege were authored or solicited and received by White House officials. Moreover, Mr. Meyer notes that these staff members *included* representatives of the White House Office of the Chief of Staff, the White House Counsel's Office, the White House Office of Legislative Affairs, the White House Office of Communications, and the Office of the Vice President, but leaves open the possibility that some individuals may have represented more distant offices within the White House.

As *Ctr. for Biological Diversity* makes clear, it is the government's burden to show that the presidential communications privilege has been invoked *only* to protect communications authored or solicited and received by the President's "immediate advisers or their staff members." 2008 WL

---

messages (totaling five pages), but continues to withhold White House names in all the records described in revised OIP *Vaughn* Index Group 1. Supp. Hofmann Decl. Ex. C.

1   5129417, at *12 (citing *In re Sealed Case*, 121 F.3d 121 F.3d 729, 752 (D.C. Cir. 1997)). While

2   some of the White House officials here may be sufficiently close to the President to invoke the

3   privilege, Mr. Meyer's declaration does not satisfy the government's burden, and in fact gives the

4   Court further reason to question whether the presidential communications privilege has been

5   improperly asserted to prevent disclosure of some material.[8]

6           **(c)**      **The Government Has Failed to Show that Records Have**
    **Been Properly Withheld Pursuant to the Deliberative**
7                         **Process Privilege**

8   As EFF explained in detail in its opening brief, the government's *Vaughn* affidavits and

9   document indices, including the declarations filed by the government, are deficient and fail to

10  justify summary judgment in the defendants' favor pursuant to the deliberative process.

11  The government contends that all materials withheld pursuant to the deliberative process

12  privilege are predecisional "because they relate to, and preceded, the President's final action on

13  FISA reform—that is, the President's decision to sign the Foreign Intelligence Surveillance of 1978

14  Amendments Act of 2008 in July 2008[,]" Defs. Opp. Pl. Cross Mot. Summ. J. at 12:7-9. But this

15  position is thoroughly undercut by the fact that ODNI recently released a number of records

16  previously withheld in full under the deliberative process privilege that are unquestionably final

17  records used in the agency's dealings with the public.[9] Some of the documents released by ODNI

18  that are freely available include a "fact sheet" (compare *FISA Legislation Necessary to Keep Our*

19  *Nation Safe* at Supp. Hofmann Decl. Ex. D, as released by ODNI, and Supp. Hofmann Decl. Ex. E,

20  available at http://www.usdoj.gov/archive/ll/docs/fisa-legislation-necessary-to-keep-our-nation-

21  safe.pdf); a joint statement by DOJ and ODNI regarding a House FISA proposal (compare Supp.

22  Hofmann Decl. Ex. D, as released by ODNI, and Supp. Hofmann Decl. Ex. F, available at

23  —————————————

24  [8] The government correctly notes that EFF has decided not to challenge the redaction of identifying
    information about government officials pursuant to Exemption 6. Defs. Opp. Pl. Cross Mot. Summ.
25  J. at 17 n.6. This does not diminish the government's obligation to describe White House officials'
    duties in sufficient detail to justify all withholdings under the presidential communications
26  privilege, however.

27
    [9] Each of these records was also apparently withheld pursuant to the presidential communications
28  privilege. *See* revised ODNI *Vaughn* Index Group 2.

1   http://www.usdoj.gov/archive/ll/docs/din-doj-statement031108.pdf); three copies of a *New York*

2   *Times* op-ed by former Director of National Intelligence Mike McConnell (compare Supp.

3   Hofmann Decl. Ex. D, as released by ODNI, and Supp. Hofmann Decl. Ex. G, available at

4   http://www.nytimes.com/2007/12/10/opinion/10mcconnell.html); a second op-ed by McConnell

5   published in the *Washington Post* (compare Supp. Hofmann Decl. Ex. D, as released by ODNI, and

6   Supp. Hofmann Decl. Ex. H, available at http://www.washingtonpost.com/wp-

7   dyn/content/article/2008/02/14/AR2008021403103.html); a statement of Administration policy on

8   a House bill (compare Supp. Hofmann Decl. Ex. D, as released by ODNI, and Supp. Hofmann

9   Decl. Ex. I, available at http://www.whitehouse.gov/omb/legislative/sap/110-1/hr3773sap-r.pdf);

10  and a transcript of an interview with McConnell on CNN's "Late Edition" (compare Supp.

11  Hofmann Decl. Ex. D, as released by ODNI, and Supp. Hofmann Decl. Ex. J, available at

12  http://www.usdoj.gov/archive/ll/docs/in-case-you-missed-it022508.pdf).

13      Despite the clear and obvious post-decisional character of these newly released records, the

14  government's *Vaughn* submission asserted unequivocally that these documents were properly

15  exempt from disclosure under Exemption 5. *See* Declaration of John F. Hackett ¶¶ 30-31 (08-2997

16  Dkt. 31). Indeed, the government seems to continue to take the position that these documents were

17  legitimately withheld, but have been merely been released at the discretion of ODNI. *See* Not.

18  Filing at 1:21-27 (08-1023 Dkt. 79; 08-2997 Dkt. 62). Such withholdings—the nature of which the

19  Court can now assess in light of ODNI's recent discretionary release—are clearly unjustifiable.

20      Even if a record is predecisional at the time it is created, it "can lose that status if it is

21  adopted, formally or informally, as the agency position on an issue or is used by the agency in its

22  dealings with the public." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing

23  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Nat'l Council of*

24  *La Raza v. Dep't of Justice*, 411 F.3d 350, 356-67 (2d Cir. 2005) (same); *see also NLRB v. Sears,*

25  *Roebuck & Co.*, 421 U.S. 132, 161 (1975)  (Exemption 5 does not apply to any intra-agency record

26  that an agency has chosen to expressly adopt or incorporate by reference into a final opinion). This

27  is unquestionably the case with documents reflecting the government's positions in its dealings

28  with the public such as press releases, statements of administration and agency policy, op-eds

published in major national newspapers, and transcripts of television talk shows. The government's recent (and belated) disclosure of some of this material provides the Court with a unique window into the agencies' untenable deliberative process claims.

Finally, the government repeats its argument that all material withheld under the deliberative process privilege is, in fact, deliberative, and therefore exempt from disclosure. Def. Opp. Pl. Cross Mot. Summ. J. at 13:8-14:7. The government points to two categories of documents as examples of material properly withheld as deliberative: talking points and emails summarizing conversations with congressional staffers. As EFF explained in its opening brief, talking points are often found to be improperly withheld under Exemption 5, particularly where they have been used to prepare government officials to answer questions from the public and media. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007); *N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 514-515 (S.D.N.Y. 2007); see also *Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271, 327 (D.D.C. 2004), *affirmed in part and reversed in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 265-266 (D.D.C. 2004). The talking points at issue were created to provide agency officials information sufficient to communicate factual information and final agency positions regarding the FISA amendments and the RESTORE Act to Congress, the media, and the public. *See* Pustay Decl. ¶ 61; Steele Decl. ¶ 30. There is no indication that the withheld documents were drafts or otherwise reflected agency deliberations, as was the case in all the opinions cited by the government in support of its withholdings here.[10]

---

[10] *Judicial Watch v. Dep't of the Army*, 402 F. Supp. 2d 241, 247 (D.D.C. 2005) (approving withholding of *draft* talking points containing "opinions, recommendations, and drafts"); *Anderson v. Cornejo*, No. 97-7556, 2001 WL 826878 at *3 (N.D. Ill. July 20, 2001) (permitting partial redaction of talking points prepared to brief an agency official for a meeting with a senator, but only to the extent the materials reflected attorney advice on pending litigation or information "not . . . relevant to the issues involved in the present case"); *Hunt v. U.S. Marine Corp.*, 935 F. Supp. 46, 52 (D.D.C. 1996) (point papers exempt from disclosure where they were "prepared in the midst of [an agency's] deliberative process to assist officers in their formulation of a final decision"); *Security Financial Life Insurance Co. v. Dep't of the Treasury*, 03-102, 2005 U.S. Dist. LEXIS 6641, 2005 WL 839543 at *11 (D.D.C. April 12, 2005) (Q&As and talking points exempt from disclosure where they were created to "explain and compare alternative tax proposals" to prepare agency officials to testify before Congress); *Williams v. Dep't of Justice*, 556 F. Supp. 63, 65 (D.D.C. 1982)  (factual summaries in internal agency memoranda prepared in contemplation of

---

Moreover, documents that simply report or provide summaries of conversations with congressional staffers, briefings after the fact, or Hill activity are factual and not deliberative. Such factual information may be withheld under the deliberative process privilege only where disclosure "would expose an *agency's* policy deliberations," not those of Congress. *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1557 (D.C. Cir. 1993) (emphasis added). Here, disclosing summaries of agency conversations with congressional staffers cannot risk exposing the agency's deliberative process for the simple reason that the "process" at issue here—enactment of legislation—belongs to Congress and not Executive agencies.[11]

> **(d)    The Government Has Failed to Show that Records Have Been Properly Withheld Pursuant to the "Common Interest" Privilege or the Attorney Work Product Doctrine**

The government does not dispute that it may not use the common interest privilege to protect a "lobbying effort intended to avert litigation by applying political pressure on federal agencies." Defs. Opp. Pl. Cross Mot. Summ. J. at 23.  Instead, the government contends that EFF "mischaracterizes the circumstances present in this case," and that the agency records at issue were in furtherance of a common legal interest. Defs. Opp. Pl. Cross Mot. Summ. J. at 22. In the government's view:

---

litigation were properly withheld where "by their nature . . . [they] unavoidably disclose the nature of the deliberations in progress"). *See also People of the State of Calif. v. EPA*, 07-2055 JSW, 2008 WL 5384623 at *30, 37-38 (N.D. Cal. Dec. 22, 2008) (finding talking points deliberative only after *in camera* review).

[11] The cases cited by the government do not hold that the deliberative process privilege extends to agency positions communicated to congressional staff or any other third party, but that internal agency documents are predecisional where they reflect deliberations prior to a final decision within the Executive branch. *Calif. State Foster Parent Ass'n v. Wagner*, No. 07-05086, 2008 U.S. Dist. 63819, 2008 WL 2872775 at *2 (N.D. Cal. July 23, 2008) (agency's budget change proposals predecisional to the governor's approval of final budget); *L.H. v. Schwartzenegger*, No. 06-2042, 2007 U.S. Dist. LEXIS 52060, 2007 WL 2009807 at *4 (E.D. Cal. July 6, 2007) (same); *Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484, 1496-97 (D.C. Cir. 1984) (agency's relevant final decision was to "make a recommendation to *another agency* with ultimate authority for developing the President's budget proposals") (emphasis added).

> The Government and the telecommunications carriers had a straightforward, legal, common interest in the matter they were discussing: the enactment of a provision that would potentially end litigation in which it was alleged that telecommunications carriers had assisted the Government in surveillance activities.

Defs. Opp. to Pl. Cross Mot. Summ. J. at 21.  The government cites no declarations in support of this factual assertion, and the record is devoid of any facts that show what the legal interests of the carriers may be.  Moreover, the government does not address or explain its prior assertions that the "United States' interest is not adequately represented by the parties," or that the telecoms had opposing interests. Mot. to Intervene by the United States at 6:16-17 and 7:11-13 (*Hepting v. AT&T*, Case No. 06-0672-VRW) (Declaration of Marcia Hofmann Ex. 19 ("Hofmann Decl") (08-2997 Dkt. 44)).  Nor does the government address the fact that it is a litigation *opponent* of the telecoms in five cases (which comprise all of the cases effected by Section 803 of the FISAAA), or that its own liability was not at issue in the legislation discussed in the withheld records. Pl. Cross Mot. Summ. J. at 26-27.

Neither the common interest privilege nor the attorney work product privilege protects these agency records because the government's interest in ending the litigation is not a legal interest, but rather a means to an end.  The carriers had asserted that they would refuse to cooperate with lawful orders unless they received immunity, and the government lobbied for that immunity in order to help ensure the carriers' future cooperation. *See* Hofmann Decl. Exs. 10-15; McConnell Decl. ¶ 13.

Nevertheless, the government attempts to recharacterize its political and business interest as a legal interest, asserting that the "Government clearly has its own legal interest in the litigation to protect against the disclosure of information related to alleged intelligence relationships and activities." Defs. Opp. to Pl. Cross Mot. Summ. J. at 24.  This argument fails because the asserted interest must be a common one. *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).  As the government has previously admitted, "the [telecom] parties' interest may well be in the *disclosure* of state secrets to the extent that doing so might assist them in presenting their claims or defenses fully to vindicate their own private interests." Hofmann Decl. Ex. 19 at 6:16-17 and 7:11-13 (emphasis original).  Furthermore, the communication and alleged work product at issue must

be designed to further the common interest.  Dismissing the cases against the telecoms does not protect against the disclosure of information when other cases are ongoing.[12]

The government's citation to *Hunton & Williams*, 2008 WL 906783, continues to be unavailing. In *Hunton*, the DOJ and a company entered into a common interest agreement "for the limited purpose of addressing their shared common interests." 2008 WL 906783 at **4-5. The plaintiff sought documents directly pertaining to the litigation, including drafts of court filings and documents discussing "views concerning the effect of any injunction on governmental use of Blackberry devices, the issue of how exceptions for government use could be implemented and whether any injunctive relief would be contrary to the public interest." *Id*. at *4. The court found a common legal interest in limiting the scope of an injunction, using the simple and direct reasoning that "an injunction, by definition, is an equitable legal remedy." *Hunton*, 2008 WL 906783 at *6.

The government's citation to *Hunton*'s discussion of dismissal is inapposite, as that discussion related to whether the government and the private entity had a common *opponent. Id.* at *7. In the following paragraph of the decision, *Hunton* did not find a common interest in dismissal, but merely a "joint interest in preventing or limiting the scope of any injunction." *Id*. Here, by sharp contrast, EFF is not seeking records about ongoing litigation or any pending injunction, but rather lobbying efforts to push through prospective legislation. Pl. Cross Mot. Summ. J. at 24-30. Moreover, the *Hunton* court's order only upheld Exemption 5 with respect to documents in the scope of an agreement that was "limited to the subject of any injunction that would be considered by the court." *Id*. at **6, 10. The decision does not make clear whether a common interest in dismissal was at issue, but to the extent that it was, the court rejected that argument.

Finally, the government fails to address the crime-fraud exception to the common interest privilege and work product doctrine.  In a footnote, the government asserts that this argument is "meritless," but cites to neither law nor facts. Defs. Opp. Pl. Cross Mot. Summ. J. at 24 n.12.  The government does not dispute that the warrantless wiretapping was illegal, preferring to contend that

---

[12] In any event, the government's interest in protecting properly classified information from unauthorized disclosure was never in jeopardy.  No secret information has been disclosed in the NSA MDL so far, and any disclosure pursuant to any future court orders would be, by definition, authorized disclosure.

1   it is "not at issue" in this litigation.  *Id.*   To the contrary, the illegality is at issue because the

2   government may not claim the common interest privilege to hide illegal activity. *In re Napster, Inc.*

3   *Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007). The existence of other litigation on a similar

4   subject does not remove this Court's jurisdiction to decide whether the crime-fraud exception

5   applies.

6       It is not surprising that the government would not dispute the illegality.   The prior

7   administration had admitted that the program violated FISA. Summ. of Evidence at 10 & 42 (MDL

8   06-1791 Dkt. 481) (Hofmann Decl. Ex. 1).   Likewise, President Obama has promised "no more

9   illegal wiretapping of American citizens"[13] and Attorney General Eric Holder has criticized the

10  wiretapping program, lamenting that he "never thought that [he] would see that a president would

11  act in direct defiance of federal law by authorizing warrantless NSA surveillance of American

12  citizens." Eric H. Holder Jr., *Eric Holder on the Rule of Law, 2008 ACS National Convention,* June

13  12, 2008, video available at http://acslaw.org/node/6720.

14      EFF has shown sufficient evidence to support a good faith belief that *in camera* review of

15  the materials may reveal evidence to establish the claim that the crime-fraud exception applies, and

16  the government has offered no evidence to the contrary. *In re Napster*, 479 F.3d at 1090.

17  According, this Court should review *in camera* the agency records withheld on the basis of the

18  common interest privilege and determine whether the claim is well founded.[14]

19              **2.       The Defendants Improperly Withheld Records Under Exemption 6**

20      The government's argument in defense of its Exemption 6 withholding relies primarily

21  upon Exemption 3, which it contends is coextensive with its Exemption 6 claims.  As noted in

22  EFF's opening brief, despite not challenging Exemption 3 directly, "EFF continues to challenge the

23  Exemption 5 and 6 withholdings to the extent that records can be disclosed without revealing

24
25  [13] Unofficial transcript available at http://manyeyes.alphaworks.ibm.com/manyeyes/datasets/
    transcript-of-sen-barack-obamas-rema/versions/1.txt (last visited June 1, 2009).

26  [14] Finally, even if the Court determines that the defendants have properly invoked Exemption 5 to
27  withhold some material, the agencies have waived any privilege to the extent those records have
    been shared with congressional staff, White House officials, or other outside parties. Pl. Cross.
28  Mot. Summ. J. at 30 n.25. The government has not disputed this argument.

classified information or the government's intelligence sources and methods." Pl. Cross Mot. Summ. J. at 8 n.5.  The identities of the individuals contacting the government would reveal neither classified information nor the government's intelligence sources and methods (no one is contending that the lobbyists are the sources of intelligence information or that lobbying is a method of intelligence gathering).

Moreover, the identity of at least some lobbyists who contacted the government on these issues is well known.  *See* Hofmann Decl. Ex. 9 (Michael Isikoff and Mark Hosenball, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007); *see also, e.g.,* Hofmann Decl. Ex. 22 (Lobbying and Disclosure Act reporting form listing individuals who lobbied, *inter alia*, DOJ and ODNI on the FISA legislation on behalf of AT&T).  Nor is the identity of at least some of the companies threatening to reduce cooperation to pressure the government a secret:

> NEWSWEEK has learned that AT&T and Verizon both conveyed such concerns to the government. According to a knowledgeable industry source (who asked for anonymity when discussing sensitive material), AT&T told intelligence officials that because the temporary eavesdropping law, passed by Congress last summer, had expired, it would no longer help government agencies launch eavesdropping measures against new targets for fear the company could be exposed to new lawsuits. Another telephone giant, Verizon, expressed similar "concerns" about eavesdropping on new targets, although the source said that Verizon did not go so far as to refuse to comply with new government surveillance requests.

Michael Isikoff and Mark Hosenball*, Scare Tactics,* NEWSWEEK, Feb. 27, 2008, *available at* http://www.newsweek.com/id/116683  (Supp. Hofmann Decl. Ex. K).

Moreover, there is a strong public interest in the disclosure of the identity of the lobbyists at issue in this litigation. As acknowledged by the Lobbying and Disclosure Act of 1995, "responsible representative Government requires public awareness of the efforts of paid lobbyists to influence the public decisionmaking process in both the legislative and executive branches of the Federal Government [and] effective public disclosure of the *identity* and extent of the efforts of paid lobbyists to influence Federal officials in the conduct of Government actions will increase public confidence in the integrity of Government." 2 U.S.C. § 1601 (emphasis added).  The government's citations to the declarations of Mr. Hackett and Mr. Colborn, Defs. Opp. Pl. Cross Mot. Summ. J. at 26, do not change the fact that Congress has already decided that there is a public interest in

disclosure of the information the defendants seek to hide.

Finally, the identities of the FISA lobbyists is important to effectuate the government's promise to reduce the influence of lobbyists in the new administration. Immediately after taking office, President Obama issued an executive order entitled "Ethics Commitments by Executive Branch Personnel," which severely limits the role of former lobbyists in the administration. Exec. Order No. 13,490, 3 C.F.R. 13490 (Jan. 21, 2009).[15] Knowing the identity of individuals who lobbied the defendant agencies is vital if the public is to assess, for example, whether anyone violated the pledge not to "participate in any particular matter involving specific parties that is directly and substantially related to my former employer or former clients." This is not an idle concern. For example, Wilmer Cutler Pickering Hale & Dorr is counsel for Verizon in the NSA MDL, and the Administration has nominated or appointed scores of Wilmer Cutler Pickering Hale & Dorr attorneys to executive branch positions, including defendant the Department of Justice. *See* posting of David Lat to Above the Law, *Musical Chairs: The Obama White House Counsel's Office (And ODAG picks, too.),* ABOVE THE LAW, http://abovethelaw.com/2009/01/obama_white_house_counsel.php (Jan. 21, 2009) (listing various appointees and asking "Will anyone be left at WilmerHale after Obama is through with the place?").

### 3. The Government Has Failed to Segregate Exempt Materials From Non-Exempt Material as the FOIA Requires

The FOIA explicitly requires that "[a]ny reasonably segregable potion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b); *see also Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1980) ("it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.") To satisfy its burden, an agency is "required to provide the court with its *reasons*—as opposed to its simple conclusion—for its inability to segregate non-exempt portions of the documents, and also to provide the court with a description of 'what proportion of the information in a document is non-exempt, and how that

---

[15] *Available at* http://www.whitehouse.gov/the_press_office/ExecutiveOrder-EthicsCommitments/.

material is dispersed throughout the document.'" *Lawyers' Comm. For Civil Rights of San Francisco Bay Area v. Dep't of the Treasury*, No. 07-2590 PJH, 2008 U.S. Dist. LEXIS 87624, 2008 WL 448285 at *13 (N.D. Cal. Sept. 30, 2008) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 556 F.2d 242, 261 (D.C. Cir. 1977) (emphasis in original).

In its reply, the government offers sweeping, conclusory statements from the defendants who failed to address segregability in the first instance.[16] As EFF described in detail before, Pl. Cross Mot. Summ. J. at 33-34, such cursory justifications fall far short of the specificity an agency is required to provide. *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (finding boilerplate, conclusory assertions inadequate to permit the Court to make finding on segregability); *L.A. Times Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 986 (C.D. Cal. 2007) ("Agencies may meet this burden by describing through affidavit, *in a non-conclusory manner*, why such information is not reasonably segregable") (emphasis added). Thus, the government has not satisfied its burden.

**B.      The Court Should Review the Disputed Records *In Camera***

Where, as here, the government fails to provide affidavits sufficient to justify summary judgment in its favor, a court may examine the documents at issue and determine whether the exempted material should be released. 5 U.S.C. § 552(a)(4)(B) (that a court "may examine the content of . . . agency records in camera to determine whether such records or any part thereof shall be withheld."); *Church of Scientology*, 611 F.2d at 743 ("Though the burden remains at all times on the government to establish exempt status, [i]n camera inspection may supplement an otherwise

---

[16] Supplemental Declaration of John F. Hackett ¶ 3 (08-1023 Dkt. 80; 08-2997 Dkt. 63) ("All of the documents were reviewed to determine whether they contained any reasonably segregable, non-exempt information. For documents in categories one, two and four we were able to segregate and release non-exempt information and those documents were released in part to plaintiff. After conducting a review of the remaining documents we determined that they did not contain any reasonably segregable, non-exempt information."); Supplemental Declaration of Paul P. Colburn ¶ 4 (08-1023 Dkt. 81; 08-2997 Dkt. 64) ("an attorney at OLC reviewed for segregability the five documents identified in the Office's Vaughn index (Vaughn nos. 4, 9, 112, 114, 115) that have been withheld pursuant to FOIA Exemption 5 based solely on the deliberative process privilege, and determined that no factual or other portions could be segregated for disclosure.")

sketchy set of affidavits," although "the district court's prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly."); *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) ("in camera review may supplement a *Vaughn* index, but may not replace it.")

If the Court has any doubt that EFF is not entitled to summary judgment, an *in camera* inspection of the documents in dispute in this case would be especially appropriate. As described in detail above, the Defendants' declarations and *Vaughn* indices do not provide explanations of the government's Exemption 5 and 6 withholdings sufficient to support summary judgment. Furthermore, the withheld material is not so voluminous as to be burdensome for the Court to review. Finally, the Court will best examine the question of whether Exemptions 5 and 6 were properly invoked by reviewing the documents at issue. *People of the State of Calif. v. EPA*, No. 07-2055 (JSW), 2009 WL 273411 at *4 (N.D. Cal. Feb. 4, 2009) (ordering *in camera* review of withheld material where defendant agencies failed to provide sufficiently detailed factual information in support of their exemptions claims). For these reasons, EFF respectfully urges the Court to conduct an *in camera* inspection of the documents at issue in this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    CONCLUSION

For the foregoing reasons, the government's consolidated motion for summary judgment should be denied, and EFF's cross motion for summary judgment should be granted. Should the Court have any doubt as to the impropriety of the agencies' withholdings, it should conduct an *in camera* inspection of the withheld records.

DATED:  June 2, 2009                              Respectfully submitted,


      */s/ Marcia Hofmann*
Marcia Hofmann, Esq.
Kurt Opsahl, Esq.
Nathan D. Cardozo, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION